GREER, Plaintiff in error, v. STATE, Defendant in error.

*No. State 47. Argued September 4, 1968.—Decided October 1, 1968.*
(Also reported in 161 N. W. 2d 255.)

For the plaintiff in error there was a brief by *Eisenberg, Kletzke & Eisenberg,* attorneys, and *Jerome F. Pogodzinski* of counsel, all of Milwaukee, and oral argument by *Mr. Pogodzinski.*

For the defendant in error the cause was argued by *Harold B. Jackson, Jr.,* assistant district attorney of

Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *David J. Cannon,* district attorney.

ROBERT W. HANSEN, J.  The defendant seeks reversal primarily on the ground that the evidence is insufficient to support the jury's verdict. On this point, the only determination that this court is to make is whether the evidence properly presented and rationally considered by the jury is sufficient to prove the defendant's guilt beyond a reasonable doubt.[1]

All witnesses, the defendant included, place the defendant and the deceased at the scene of the killing in the Milwaukee tavern in close proximity to each other. While defendant was seated at the bar and deceased was standing at the bar, with one Essie Burt seated between them, there was an exchange of angry words. The deceased left, went to a table and, immediately prior to the stabbing, returned to the bar. The argument resumed. Essie Burt jumped off the barstool, stood facing the deceased and said something to him. There is dispute in the evidence as to what she did after jumping up, and dispute as to what defendant did. Witnesses for the prosecution testified that the deceased shoved Essie Burt toward the defendant, that he reached over her shoulder and swung at the deceased with an overhand motion. Witnesses heard the deceased state either that "he cut me" or "I'm cut." One witness testified that he saw a knife in defendant's hand and saw the defendant strike deceased in the neck with the knife.

Defendant's claim of insufficiency of evidence is directed toward showing that this testimony is inherently incredible. The eyewitness, Seabe Young, testified that he was sitting on a chair near the jukebox, six feet from the bar. The tavern owner testified that the jukebox

---

[1] *State v. Clarke* (1967), 36 Wis. 2d 263, 153 N. W. 2d 61; *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183; *State v. Stevens* (1965), 26 Wis. 2d 451, 132 N. W. 2d 502.

was fifteen feet from the bar. However, the tavern owner also testified that there were from thirty to forty persons in the place, sixteen seated on stools near the bar, and that no one but the defendant and deceased were standing at the bar immediately prior to the stabbing. It was for the jury to decide whether Young had opportunity to witness what took place. Weight and credibility of his testimony were for the jury to determine.

Defendant further claims that physical factors make incredible the testimony presented. This refers to the fact that the deceased was six feet tall, Essie Burt about 200 pounds in weight and five foot eight to ten inches tall, the defendant only five feet four inches tall. The contention is that the deceased was too tall, Essie Burt too massive and the defendant too short for him to have reached over her to stab the deceased in the neck. However, we do not deal here with three stone statues placed side by side. A barroom brawl is a fluid situation. Height and weight measurements do not render the testimony as to what happened incredible or unbelievable.

We conclude that there is credible evidence to sustain the jury finding that the defendant stabbed the deceased in the neck. There also was testimony that Essie Burt swung at the deceased; one witness testified she swung with a large object similar to a purse in her hand; another thought her purse was in her hand when she swung. Even if there had been testimony, which there was not, that she had a knife in her hand, it would be for the jury to believe or disbelieve such testimony. Certainly on this record there was credible evidence to warrant the jury in believing and finding that the defendant inflicted the fatal stab wound.

Defendant additionally seeks reversal of the conviction because of the following instruction given to the jury by the trial judge:

"When one person assaults another violently with a dangerous weapon, likely to kill, and the person thus assaulted dies therefrom, and if the circumstances of the killing show beyond all reasonable doubt that such killing was not privileged under the law of self-defense, as hereinafter defined, then, *when there are no circumstances to prevent or rebut the presumption,* the legal and natural presumption is that death was intended, and such killing would be murder in the first degree." (Emphasis supplied.)

Defendant claims this instruction permits a finding of specific intent based solely on presumption, shifting the burden of proof to the defendant regardless of circumstances. The italicized portion correctly limits the application of the presumption, but one who stabs another in the neck with a knife must be held to understand that death is a natural and probable consequence of such act. This particular instruction has been used before and held to be proper.[2] Moreover, the record fails to show any objection by defense counsel to the instruction used at the time of trial, nor does it indicate any requested instructions by defense counsel. It was the duty of defense counsel to make objection then.[3]

Defendant additionally contends that the trial court should have instructed the jury on the issue of manslaughter. Defendant made no request for a manslaughter instruction during the trial and made no objection when the trial court failed to give one. The defendant cannot complain of the failure to instruct on an included offense unless he has asked for that instruction.[4]

[2] *State v. Carlson* (1958), 5 Wis. 2d 595, 604, 605, 93 N. W. 2d 354.

[3] *State v. Halverson* (1966), 32 Wis. 2d 503, 510, 511, 145 N. W. 2d 739.

[4] *Green v. State* (1968), 38 Wis. 2d 361, 156 N. W. 2d 477, citing *Neuenfeldt v. State* (1965), 29 Wis. 2d 20, 138 N. W. 2d 252, and *Williamson v. State* (1966), 31 Wis. 2d 677, 683, 143 N. W. 2d 486, 489.

Finally, defendant asserts that the trial court erred in denying the defense motion for a new trial on the grounds of newly discovered evidence and in the interest of justice. The new evidence relied upon is the discovery of a piece of paper in deceased's belongings with the name of Essie Burt upon it. Possibly such notation would impeach Essie Burt's testimony that she did not know the deceased. It would be material in no other respect. Evidence which merely impeaches the credibility of a witness does not warrant a new trial on this ground alone.[5] The notation on a piece of paper does not lead to a conclusion to a reasonable probability that a different result would be reached on a new trial. There was ample evidence to sustain the finding of guilt without the testimony of Essie Burt. In any event, granting or denying the motion for new trial on this ground is discretionary and, in the absence of a clear showing of abuse of discretion, will not be disturbed. As to a new trial in the interest of justice, there is no basis in this record for those grave doubts regarding the guilt of the defendant that alone would justify a finding that justice probably has miscarried.[6] The verdict of the jury in this case is supported by the evidence, and justice cannot be said to have miscarried.

*By the Court.*—Judgment affirmed.

---

[5] *State v. Debs* (1935), 217 Wis. 164, 258 N. W. 173.

[6] *See State v. Fricke* (1934), 215 Wis. 661, 667, 255 N. W. 724.