CLEGHORN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 210. Submitted June 7, 1972.—Decided June 30, 1972.*
(Also reported in 198 N. W. 2d 577.)

For the plaintiff in error the cause was submitted on the brief of *Norman Lee Cleghorn* of Union Grove, pro se, and for the defendant in error on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

HALLOWS, C. J.   Three of the issues raised on this appeal were considered by the court in its unpublished opinion.   We have carefully re-examined the record, our

unpublished opinion, and the arguments of Cleghorn; and we are unpersuaded these issues have any arguable merit. We therefore decline to make any extended discussion. *Bies v. State* (1972), 53 Wis. 2d 322, 193 N. W. 2d 46.

Cleghorn claims he is entitled to an instruction on self-defense, but he testified he did not intend to shoot or to kill Weaver. One exercising the privilege of self-defense must intend to use some force or to threaten force against another for the purpose of self-defense. The versions of the shooting affair differ, with Weaver claiming Cleghorn pulled a gun and fired at him and Cleghorn claiming Weaver had a gun, fired at him, and any later shots were accidental and resulted from the scuffle. On this record, self-defense was not in the case. *Thomas v. State* (1972), 53 Wis. 2d 483, 488, 192 N. W. 2d 864. The case of *Campbell v. State* (1901), 111 Wis. 152, 86 N. W. 855, is not in point because there the defendant intended to use force to stop an attack although he denied any intention to kill.

Cleghorn claims he requested an instruction on aggravated battery (sec. 940.22, Stats.) and injury by negligent use of a weapon (sec. 940.24). The record discloses no such request before the jury retired and a trial court does not commit error in failing on its own motion to instruct on and submit a lesser and includable crime. *Green v. State* (1968), 38 Wis. 2d 361, 363, 156 N. W. 2d 477; *Hayes v. State* (1968), 39 Wis. 2d 125, 136, 158 N. W. 2d 545. We do not pass on the question of whether the alleged requested instructions involved an includable crime, but we note the trial court did instruct on endangering safety by conduct regardless of life (sec. 941.30).

The argument that a new trial was warranted on the basis of newly discovered evidence stands on a statement of an inmate in the state prison, stating he was

in Knox's tavern that night and saw Weaver first pull a gun and start shooting. Aside from the value of such testimony, which in the unpublished opinion we stated would be merely cumulative, a motion for a new trial on newly discovered evidence must be made within one year of trial as the law stood at that time.[2] *See* sec. 958.06 (1), Stats. 1967. No such motion was brought within a year of the October 23, 1969, conviction.

Cleghorn now claims the trial court made three more errors in instructing the jury, *i.e.*, substituting the word "usual" for "deliberate" in instruction Wis J I—Criminal 1105, failing to state the presumption that one intends the natural and probable consequences of his acts is rebuttable, and omitting the final paragraph of instruction Wis J I—Criminal 170 on the effect of circumstantial evidence. None of these objections was brought to the trial court's attention during the trial and only two of them were raised in the postconviction motion. Therefore, these issues are not properly before us. Likewise, the claim of inflammatory evidence, which consisted of Weaver's bloodstained shirt on the prosecutor's table, was not raised during the trial and is not properly before us. An appeal can only raise errors properly preserved on the record; it is not a device to finecomb the transcript to find by hindsight new defenses, arguments or trial strategies.

In a new argument on this appeal, Cleghorn contends the state's no-merit procedure violates his right to appellate counsel as guaranteed by *Anders v. California* (1967), 386 U. S. 738, 87 Sup. Ct. 1396, 18 L. Ed. 2d 493, in that it allows appointed counsel to argue against

---

[2] It may be that such a motion in a criminal case must now be made within ninety days after trial. *See* sec. 974.02 (1), Stats., and Betty Brown, *The Wisconsin District Attorney and the Criminal Case*, pp. 217, 218 (1971). By ch. 298, Laws of 1971, sec. 974.02 (1) was amended to include newly discovered evidence as a ground for such motion under the new code.

his client. In *Anders*, the United States Supreme Court found that permitting counsel's withdrawal was improper because his stated basis for so acting was only a conclusory opinion of no merit in the appeal. Such an opinion was not equivalent to an evaluation of the appeal as frivolous, furnished no help to the court in determining the merits of the appeal and did not provide a basis for the reviewing court to determine whether the attorney had given adequate representation to the indigent. *Anders* requires that appointed counsel must perform his duties as adequately as paid counsel so the indigent will not be deprived of adequate representation because of his indigency.

However, neither a paid counsel nor an appointed counsel in this state, without violating his oath as an attorney, can argue on appeal any question of law or fact "which is not honestly debatable." [3] The oath does not prevent an attorney, when the existing doctrine of law does not support a reversal, from arguing there is a sound basis for a change in the law. However, in many cases, although counsel uses his best effort to find meritorious ground for appeal, he will find an appeal would be wholly frivolous and the record devoid of prejudicial error; in such cases, appointed counsel generally asks for leave to withdraw from the case.

It is Wisconsin's procedure of allowing appointed counsel to withdraw from such a case which is challenged by Cleghorn, who argues the procedure encourages an attorney to argue points, which seemingly lack merit, against his client. Specifically, Cleghorn argues

---

[3] "256.29 **Attorneys regulated.** (1) ATTORNEY'S OATH. Each person admitted to practice as a member of the bar of any court of this state . . . shall in open court take an oath or affirmation of the tenor following, to wit: I do solemnly swear: . . .

"I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, or any defense, except such as I believe to be honestly debatable under the law of the land; . . ."

Thomas Whipp, counsel appointed by this court, in making his no-merit report acted in the role of amicus curiae to the court and not as an advocate for him as required by *Anders*. But *Anders* at page 744 states that if counsel finds the case to be "wholly frivolous" after a conscientious examination of it, he may so advise the court and request permission to withdraw. The request, however, must be accompanied by "a brief referring to anything in the record that might arguably support the appeal."

Under our procedure, upon appointment each attorney is furnished with detailed instructions and is required to make periodic reports of progress. The attorney is urged to consult with trial counsel and the indigent, as well as making a careful examination of the record. If the appointed attorney concludes an appeal would be frivolous, he prepares a no-merit brief and sends a copy of it to the indigent, who is given fifteen days in which to comment thereon to the supreme court. The instructions to counsel do not require him to argue against his client but demand a fair evaluation of the record and a search for meritorious arguments grounded thereon. The indigent may not only disagree with the no-merit brief but he may add new arguments or issues he wishes to be considered by the court, as was done in this case. The supreme court not only examines the no-merit brief but any brief or correspondence filed by the indigent and also makes a new investigation and determination of the merits of the appeal from scratch. Occasionally under our no-merit report procedure, the independent investigation of the record by this court leads it to differ with the no-merit brief of counsel; and in such cases, we point out to counsel there are issues of arguable merit and deny his request for withdrawal and order him to proceed with the appeal. In each case a memorandum is prepared for the court by a law clerk of one of the justices. This memo covers not only the issues dealt

with in the no-merit brief but also any additional issues brought to our attention by the indigent or discovered in the record. The no-merit brief, the memorandum, and the material from the indigent are all presented to the whole court by a justice and all the issues are discussed by the court in conference. A decision is then made and a written opinion filed but not always published. If the court independently decides there is no merit to any of the arguments or the issues raised, it permits the attorney to withdraw and dismisses the appeal.[4]

Under a new procedure hereby adopted, when this court has found there is no merit to any of the issues raised or discovered, besides allowing counsel to withdraw, this court will summarily decide the merits and affirm the conviction when an appeal has been taken or a writ of error has been issued. The possibility of such summary disposition of the merits will be given by notice to the indigent at the time he receives notice of his right to file a brief modifying, or in opposition to, or in addition to, the no-merit brief of his appointed counsel.

In the instant case, Mr. Whipp filed with this court in February, 1971, a seven-page, no-merit brief in which he reviewed the testimony, citing the pages of the transcript for each fact. Cleghorn was sent a copy and given time to respond, which he did, bringing out an additional issue. In Whipp's analysis he stated there were three issues which might arguably support an appeal: (1) Whether the evidence was sufficient to support the conviction, (2) whether the court erred in refusing to submit an instruction on self-defense, and (3) whether the court erred in refusing to submit an instruction on aggravated battery or an injury by negli-

---

[4] For more on Wisconsin's no-merit procedure, *see* Eisenberg, *No Merit Briefs in the Wisconsin Supreme Court,* 45 Wis. Bar Bulletin 28 (April, 1972).

gent use of a weapon. The no-merit brief considers and evaluates these issues in the light of the evidence most favorable to the defendant and of the applicable law. Finally, the brief concludes an appeal from the conviction would be wholly frivolous and without merit.

Here, our procedure was followed, and although the court independently decided there was no merit to the issues raised by the no-merit brief and by Cleghorn, it permitted Cleghorn to appeal pro se. This part of the procedure we now change so this court need not consider twice all the arguments contained in a no-merit report when we have determined there is no merit to the issues raised. In the future when a no-merit brief has been received, the clerk of this court will notify the indigent he has twenty days (not fifteen) in which to file a brief on his own behalf which may take issue with the no-merit brief and may add such other issues as the indigent wishes the court to consider. The indigent will also be notified the court will make an independent review of the record, consider all issues raised and found, and may in a proper case summarily decide the appeal, as well as dismiss counsel.

On this appeal we have again reconsidered all the arguments Cleghorn has raised even though it amounts to a second consideration by this court of some of his claims. We do not consider Mr. Whipp's no-merit report as an argument against Cleghorn's position in order to demonstrate frivolity but rather an evaluation of the factors involved with a conclusion an appeal would be frivolous because of the lack of any merit.

The *Anders Case* requires an evaluation of the appeal by appointed counsel and as conscientious an evaluation as would be made by paid counsel. In making such an evaluation, counsel must state to the court the evidence in favor of an appeal as well as the possibility of a decision sustaining the conviction. Cleghorn argues that

such an evaluation of the evidence and the law is the equivalent of arguing against one's client. While the difference between an evaluation and an argument may at times lurk in the shadows, a court can distinguish between being informed by the one and being convinced by the other.

Cleghorn also argues there is a distinction between "wholly frivolous" and "without merit." We think not. The *Anders Case* uses the term "wholly frivolous" and that is exactly what Mr. Whipp's evaluation led him to conclude. If Mr. Whipp's no-merit report ended with only that conclusion and without giving supporting reasons, his no-merit report would not have been accepted and would have been fatally defective under *Anders* as a mere conclusory opinion. We fail to see any distinction, and there should be none, between "wholly frivolous" and "without merit." When applied to an appeal, any possible distinction could only be based upon a degree of possibility of reversal. In *Nickols v. Gagnon* (7th Cir. 1971), 454 Fed. 2d 467, the Seventh Circuit rejected this argument in sustaining the Wisconsin no-merit procedure.[5]

---

[5] Cleghorn cites many cases he says support his position. *People v. Feggans* (1967), 67 Cal. 2d 444, 62 Cal. Rptr. 419, 432 Pac. 2d 21, has language cited to the effect appointed counsel should not argue the case against his client. However, the no-merit report in that case did not contain a recitation of relevant facts nor citation to appropriate authorities and therefore is contrasted to the report in *Nickols v. Gagnon, supra,* and in the instant case. *People v. Turner* (1967), 252 Cal. App. 2d 536, 60 Cal. Rptr. 567, is not in point. *Commonwealth v. Baker* (1968), 429 Pa. St. 209, 239 Atl. 2d 201, concerned a failure to adequately notify the indigent client of an intention to withdraw and did allow a withdrawal and an appeal pro se. *Commonwealth v. Hurst* (1971), 218 Pa. Super. 239, 276 Atl. 2d 311, and *Commonwealth v. Bartol* (1971), 218 Pa. Super. 191, 279 Atl. 2d 771, involved merely the type of conclusory letter condemned in *Anders*. *State v. Franklin* (1967), 78 N. M. 127, 428 Pac. 2d 982, concerned a failure to provide the appellate court with

While an indigent defendant has a constitutional right to assistance of counsel, he has no right to require an advocate to violate his professional and personal integrity and oath of office by advancing arguments which he does not honestly believe have any merit. Counsel does not need to stultify himself by arguing hopeless and nonmeritorious appeals.

We conclude Cleghorn has had fair representation and his right to assistance of counsel on appeal was not violated.

*By the Court.*—Judgment affirmed.

---

a sufficiently complete record on appeal. *Cammack v. State* (1970), 254 Ind. 637, 261 N. E. 2d 862, concerned a failure to present any cogent relation of cited authority to the factual issues arguably presented. *State v. Toney* (1970), 23 Ohio App. 2d 203, 262 N. E. 2d 419, approved appointed counsel's actions and is not at variance with *Nickols*. *McClendon v. People* (Colo. 1971), 481 Pac. 2d 715, did not involve a request to withdraw but rather the submission of an appellate brief with a waiver of oral argument; *Golsby v. State* (Fla. App. 1970), 235 So. 2d 772, concerned an absence of any citation to the record or to legal authorities. *State v. Gates* (Mo. 1971), 466 S. W. 2d 681, is the only one of these cases which is at variance with *Nickols*, as *Gates* quotes at length, approves and adopts ABA *Standards Relating to the Prosecution Function and the Defense Function* (1970 Tentative Draft), pp. 293, 300–302, sec. 8.3. *Nickols* cited the Tentative Draft (454 Fed. 2d at 470, n. 5) and took issue with it to the extent it indicated appointed counsel was required to advocate reversal even after counsel concluded the issue was without merit, and to the extent the standards found a difference between frivolity and absence of merit. 454 Fed. 2d at 471. Cleghorn also cites the concurring opinion in *Johnson v. United States* (D. C. Cir. 1966), 360 Fed. 2d 844, but that opinion does not criticize procedure of the Wisconsin type. Rather, it states requests to withdraw should be accompanied by an analysis of the critical issues of fact and law, if the appellate court is to properly perform its reviewing function. 360 Fed. 2d 844, 846.